```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
DOMINIC D'ASCOLI,                  :
                Plaintiff,         :    02 Civ. 2684 (LMM)
           - v -                   :    MEMORANDUM AND ORDER
ROURA & MELAMED, WALTER ROURA and  :
MARTIN MELAMED,
                                   :
                Defendants.
                                   :
-----------------------------------x
```

McKENNA, D.J.

**1.**

The above action was brought under 42 U.S.C. § 1981 (and New York City Administrative Code § 8-107) to recover damages for the termination of the employment of plaintiff, a white male trial lawyer, by the defendant law firm and its two partners, as a result of racial discrimination. Plaintiff claims that he was replaced by a black male. The case was tried to a jury which found for plaintiff, awarding him $96,800 for past lost earnings, nothing for emotional distress and humiliation, and $145,000 in punitive damages. By Memorandum and Order dated May 5, 2005, the Court awarded plaintiff $59,809.42 in attorney's fees and expenses. See 42 U.S.C. § 1988b and N.Y.C. Admin. Code § 8-502(f).

**2.**

Plaintiff moves for prejudgment interest. Defendants move pursuant to Fed. R. Civ. P. 50 for (i) judgment as a matter of

law, (ii) an order vacating the award of punitive damages, and (iii) an order reducing the award for lost back pay.

> The district court can grant [a Rule 50(b)] motion only if after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of the non-moving party, it finds that there is insufficient evidence to support the verdict. The district court cannot set aside the jury's credibility findings and cannot find for the movant based on evidence the jury was entitled to discredit.

Fabri v. United Tech. Int'l, Inc., 387 F.3d 109, 119 (2d Cir. 2004) (quoting and citing Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001)).[1]

**3.**

The McDonnell Douglas standard for a prima facie case requires that a plaintiff show "1) that he belonged to a protected class; 2) that he was qualified for the positon he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an

---

[1] Defendants' Rule 50(b) motion is not untimely, as plaintiff appears to suggest. At trial, defendants moved for judgment at the end of plaintiff's and the entire case on the ground of the argued "failure of plaintiff to satisfy the fourth prong of the McDonnell [Douglas Corp. v. Green, 411 U.S. 792 (1973)] standard. There is a total lack of evidence to show that [plaintiff] was replaced by a similarly situated individual from an unprotected class. In this case, the unprotected class is African-American, or black, and the class according to [plaintiff's] pleadings is white." (Transcript 416.) Defendants renewed the motion immediately after verdict. (Id. 508-509.) The Court noted that the motion was timely made and to be briefed, as it subsequently was. (Id. at 509.) The subsequent briefing does not render the oral motion untimely. Casey v. Long Island Railroad Co., 406 F.3d 142, 148 (2d Cir. 2005).
   Plaintiff's motion for an order precluding defendants from making a Rule 50 motion is denied.

inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted). "[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted); see also Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc) (citations omitted) (fourth prong "the ultimate filling of the position by a person not of the protected class").[2]

The essence of defendants' motion (insofar as it is directed to the jury's findings that they were liable to plaintiff) is that there was no evidence that plaintiff was replaced by the black trial lawyer by whom plaintiff claims he was replaced.

There was evidence at trial, however, from which the jury could have inferred that defendant was replaced by Rudyard Whyte, a black trial lawyer.

Plaintiff's employment by defendant was terminated on or about March 15, 2000. Defendants had extended an offer to Mr. Whyte in January of 2000, and Mr. Whyte joined defendants shortly after plaintiff left. Mr. Whyte began at a salary of $150,000 a year; when he left, plaintiff was making $145,000 a year. Mr.

---

[2] The McDonnell Douglas prima facie case standard is applied in both Title VII and 42 U.S.C. § 1981 employment discrimination cases. McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

3

Whyte, while with defendants, has tried cases in Queens and Staten Island and Brooklyn and Manhattan, and "in the Bronx, just as [plaintiff] had done." (Tr. 367.) While defendants offered testimony to the effect that plaintiff was fired for reasons unrelated to their hiring of Mr. Whyte, and that Mr. Whyte was not hired to replace plaintiffs but for other reasons (including "rainmaker" potential), it is not for the Court on this motion to decide this case. Rather,

> [i]n ruling on a Rule 50 motion, "the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give the party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."

Jarvis v. Ford Motor Co., 283 F.3d 33, 43 (2d Cir.), cert. denied, 537 U.S. 1019 (2002) (quoting Tolbert, 242 F.3d at 70). Under that standard, defendants' motion, insofar as it is addressed to liability, must be denied.

**4.**

Defendants next argue that there was insufficient evidenced to support any[3] award of punitive damages.[4]

---

[3] Defendants do not seek remittitur pursuant to Fed. R. Civ. P. 59.

[4] Again, plaintiff argues that defendants' motion is untimely. According to plaintiff, "the question of the sufficiency of the evidence supporting the jury's punitive damage verdict is not properly before the Court" because it was not raised before the jury retired. But defendants did object, prior to the submission of the case to the jury,

4

In Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999), the Supreme Court -- after noting that 42 U.S.C. § 1981a(b)(1) states (in part as relevant here) that: "A complaining party may recover punitive damages under this section . . . if the complaining party demonstrates that the respondent engaged in discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual" -- concluded that "Congress plainly sought to establish two standards of liability -- one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." 527 U.S. at 534. The Court found that the statutory "terms 'malice' or 'reckless indifference' pertain to an employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535. "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 535.

Here, the record is devoid of evidence that, or from which it could reasonably be inferred that, defendants, or any of them, "perceived risk that [their] actions [in terminating

---

on the same ground on which they now object, the lack of evidence of wilfulness (Transcript 425-427), and plaintiff opted to put in no punitive damage-specific evidence. Defendants renewed the point in their oral Rule 50 motion. (Id. 508.) See n.1, supra.

5

plaintiff to replace him with Mr. Whyte would] violate federal law." Kolstad, 527 U.S. at 536.

The Second Circuit had said that, "[a]s an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite "evil motive",'" Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001) (quoting Kolstad, 527 U.S. at 538). The record is also devoid of any egregious or outrageous actions toward plaintiff.

The award of punitive damages must, under Kolstad, be vacated.[5]

**5.**

Defendants also argue that the jury's award of compensatory damages should be reduced because plaintiff failed to mitigate his damages.[6]

"A discharged employee must 'use reasonable diligence in finding other suitable employment,' which need not be comparable to their previous positions." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998) (citing Ford Motor Co. v. EEOC, 458 U.S.

---

[5] "[T]he federal standard applies to claims for punitive damages under the [New York City] Administrative Code." Farias, 259 F.3d at 101. What is said above governs the punitive damage verdict to the extent it was awarded under the Administrative Code.

[6] It is not clear, indeed it is quite doubtful, that this argument was preserved for post-trial Rule 50 consideration, as were the arguments previously considered. In any event, the Court considers the argument on the merits, and reaches the same result.

219, 231-32 & n.15 (1982)). While generally the employer bears the burden of demonstrating the availability of work and the plaintiff's failure to make a reasonable effort to find it, in Greenway the Second Circuit modified the rule to the extent of holding that "[a]n employer . . . is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable effort to seek such employment." Id. at 54 (citations omitted).[7]

The evidence showed, in general, that, although fired in the middle of March 2000, plaintiff did not begin to look for a job until August 2000 (finding one by January 2001); in the March-August period he was uncommunicative, stayed home, and drank in uncharacteristic quantities, as a result, in his view, of shock and a lack of self-confidence as a consequence of being fired. The jury may have considered such evidence in deciding the issue of mitigation.

More importantly for present purposes, it is not clear how the jury calculated compensatory damages. Defendants claim that the award represents "roughly eight months of salary [at $145,000 a year], which is . . . proportionate to length of time Plaintiff was out of work and not receiving severance pay." (Def.

---

[7] The Court did not charge the Greenway exception to the general rule allocating the burden of proof as to mitigation to the employer; it was not requested to do so nor has either side objected to the charge as given, or requested a new trial.

7

Mem. at 29 (footnotes omitted).) Plaintiff points out that he received bonuses during each year in which he was employed by defendants and that it is possible it did not compensate him for the months in which he did not look for a job, but did add in bonuses. (Pl. Mem. at 28.) Neither side having requested any interrogatory to the jury the response to which might suggest how the jury computed compensatory damages, the Court will assume such damages to have been computed in accordance with facts properly found, following the Court's instructions.

**6.**

Plaintiff moves for prejudgment interest on the $96,800 in compensatory damages awarded by the jury (the amount in its entirety, there is no dispute, representing back pay). According to plaintiff, "[i]nterest should be computed at the state rate of 9% per annum since plaintiff's claims arise under both federal and state law." (Pl. March 21, 2005 Mem. at 5.) Plaintiff proposes (id.), and defendants appear to accept, October 1, 2000 as an appropriate intermediate date from which to calculate prejudgment interest. Defendants dispute the plaintiff's position that the New York State 9% interest rate should apply.

"District courts are entitled to award pre-judgment interest on back pay awards in employment discrimination cases." Greenway, 143 F.3d at 55 (citation omitted). "[I]t is within the trial court's discretion to elect whether and how to compute

prejudgment interest." Id. at 56 (citing Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994)).

Here, the Court finds that prejudgment interest should be awarded, and concurs with Judge Spatt, in Luciano v. Olsten Corp., 912 F. Supp. 663, 676-77 (E.D.N.Y. 1996), aff'd, 110 F.3d 210 (2d Cir. 1997), that interest should be calculated at the rate set forth in 28 U.S.C. § 1961(a) & (b) (compounded annually), as applicable.

**7.**

In a Memorandum and Order dated May 5, 2005, the Court awarded plaintiff attorney's fees and expenses in the total amount of $59,809.42. Plaintiff seeks further fees and expenses relating to post-trial motion practice in the total sum of $11,783.80. (Specifics are contained in plaintiff's counsel's declarations of April 21, 2005 and June 17, 2005.) The application is granted. The Court finds the time accounting to be substantially accurate and the hourly rates utilized to be appropriate.

**8.**

Plaintiff seeks a correction of the trial transcript, see Antollino Declaration, June 17, 2005, ¶ 8, but without specifically identifying the page and line, and the word(s) or number(s) that require correction. The motion is denied without prejudice to renewal, if the parties are unable to stipulate to an appropriate correction.

*   *   *

Summarizing, the Court:

1. Denies defendants' motion pursuant to Fed. R. Civ. P. 50(b) insofar as it challenges the jury's finding that defendants are liable to plaintiff.

2. Grants defendants' motion pursuant to Fed. R. Civ. P. 50(b) insofar as it seeks to vacate the jury's award of punitive damages.

3. Denies defendants' motion pursuant to Fed. R. Civ. P. 50(b) insofar as it seeks to reduce the jury's award of compensatory damages.

4. Grants plaintiff's motion for prejudgment interest to the extent that plaintiff may have prejudgment interest calculated pursuant to 28 U.S.C. § 1961(a) & (b), to run from October 1, 2000 to the date of entry of judgment, but otherwise denies the motion.

5. Grants plaintiff's motion for a supplementary award of attorney's fees and expenses, in the total amount of $11,783.80.

6. Denies plaintiff's motion for correction of the record without prejudice to renewal.

The Clerk will enter judgment accordingly.

SO ORDERED.

Dated: July 13, 2005

Lawrence M. McKenna
U.S.D.J.